Mr. Lewis, who is representing me on the trial court sanction issue, has fever and because of course, COVID protocols can't attend. And he asked me to handle his argument today. And with the court's permission, I'll do that in Mr. Lewis's time slot. You may proceed small but important point that didn't make it into the briefing is the distinction between the types of fees free entitlement is limited to fees incurred. That is making a point that's not in your brief. It's it's that's what we're starting with. I just wanted to point out the distinction. It's in the brief. I just want to point out the distinction between the two types of relief. Okay, there's so many issues in this case. Just to be clear, you're on the issue of whether there's the statutory damages under the act. Well, that's that's the issue. I just want to get the statutory damages is the next thing I just wanted to point out just briefly to the difference between the types of fees that are recoverable under the under the you can eat your time. But I guess I'm just I'm just trying to thank you very much. Give us the umbrella of what this goes to. What point is this for? This goes this goes to an entitlement for entitlement to to mandatory entitlement to fees under the under the statute. Your point is that your client was that you're entitled to mandatory fees. That's correct. And because you prevailed in the injunctive relief. That's that's correct. Even though you didn't get damages at the ultimate disposition. That's correct. Because the because the because the statute provides for multiple kinds of relief and and preliminary injunctive relief declaratory relief damages under subsection B2 and and mandatory attorneys fees and costs under under subsection B3. What's your best case that you are prevailing party at the instant that the injunction is established or either that it doesn't do away with your prevailing party nature to get no damages. What what's your best case for either one of those scenarios? I just I don't remember what the case is. Is it you the same Mr. Sheps that we're also dealing with whether there was a correct sanction or not. Yes that's that's correct. And that's what Mr. Lewis was going to present that. OK. I'm going to get to it. OK. Well you use your time however you wish. Thank you very much your honor. And just just briefly on the distinction that the subsection B3 is entitlement to fees and the controlling precedent on entitlement to incurred fees is a mayor versus U.S. attorneys fees. I mean the district court just said it's not mandatory. It's discretionary. And because of all these reasons about how this case was litigated weren't he's going to exercise the courts can exercise its discretion not to award them. So what tell us I believe that there. Why do you think they're mandatory. Point us to something in the OK. I think that's the issue. Tell me if I'm wrong. Well there's two types of fees under 18 U.S.C. 2707. I'm looking at it right in front of me. Tell me where. OK. They're there under 2707 B3. That's under the entitlement section. And and you know where that's a reason where there says mandatory. So where else does it say they're man. OK. Well no that's that's what we're saying is is is is entitlement fees under B3 as entitlement fees. And then you've got an under. That's what I say mandatory. You're saying the same. That's what it says is just as appropriately a relief includes an under saying that under under subsection C under subsection C there the the the attorney's fees are are discretionary because it says in the case of a successful action enforced liability under the section of the court may assess cost of the action together with reasonable attorney's fees. And and nowhere does it say must or shall. Can you point us to any. No there's no. But but a person that's entitled to recovery a person that's entitled to recovery. OK. Well I was preparing for oral argument. My law clerk asked me since the language in the Privacy Act is so similar to the language in the Stored Communications Act. How come you're not entitled to recover statutory damages under the Privacy Act but you are recovered entitled to recover damage statutory damages under the Stored Communications Act. And I explain this because of the legal reasoning the ratio to send I of the Supreme Court in Doe versus Chow. And and and I asked my law clerk what was the reasoning of the Supreme Court in Doe versus Chow. And he said well the Supreme Court looked at the statute and said entitled recovery in footnote eight clearly says the words are construed to mean any relief provided for by the statute inclusively. And footnote eight is very clear. And I provided that to your honors as a as a hearing exhibit. The footnote eight the court's very clear that the only relief provided for in the Privacy Act is actual damages. So if you're not entitled under the Privacy Act to recover actual damages you're a person not entitled to recover. And if you're not entitled to recovery you're not entitled to a thousand dollar statutory damages. And I said to my clerk that's exactly correct. Now what happens when you apply the same legal reasoning to the Stored Communications Act. And a light went on my clerk's head and he said well the Supreme Court already construed the term entitled to recovery in footnote eight of Doe versus Chow which I provided. And entitled to recovery means entitlement to any remedy provided for under the statute inclusively. And the Stored Communication Act provides for for example it sets forth that you're entitled to preliminary relief and domain protection received preliminary relief from the court in this case. And so if you're in substance domain protection recovered preliminary relief they're a person entitled to recovery. And since they're entitled to recovery they're said my clerk that's that's exactly correct. And I want to point out on a different issue something that maybe should have been emphasized more in the briefing. And that's the procedural posture of the case under the Texas Theft Liability Act attorney fee issue. And before final judgment domain protection had been granted a preliminary injunction and a to the motion for preliminary injunction that preliminary injunction wasn't permitted under the Texas Theft Liability Act. Then CWAS appealed to this honorable court the preliminary injunction order and their appeal was dismissed. And at this point CWAS has waived its complaint. And I also want to point out the procedural posture of the case that relates to the prevailing party issue. And CWAS made a pre-judgment motion for a determination of prevailing party status before the entry of final judgment. At the time CWAS made its motion domain protection had been granted a preliminary injunction and had been granted a summary judgment. But before the entry of final judgment the positions of the parties materially changed when CWAS was forced by court order to return the stolen property. And something else that didn't make it into the briefing because of length limitations is a good explanation for the structure of the domain name system and the ICANN rules which is found however in the motion for summary judgment in the trial court's order granting summary judgment. In the old days when we'd look up a phone number we'd go to the phone book and look up a name to find the phone number. And that's in the local phone book. The phone numbers were listed by name in the phone book for geographic location for that number. The internet however isn't based on geographic location. So the first part of the domain name system is to identify which directory to link a domain name with the address for that name. The domain name system uses something called a registry which is essentially a very large bulletin board system that's just like the subject of the case, the Steve Jackson games case which is cited in our briefing. The registry holds an intermediate storage, the identity of the directory where any particular domain name can be looked up. The directory is called a name server. When a computer wants to go to a website or send an email, the first step is to check with the registry. And the user retrieves from intermediate storage in the registry the identity of the name server for that particular domain name. The computer can contact the address for viewing a website or sending email and such. And the internet is governed by what are referred to as the ICAM rules. The United States government set up this system through the Department of Commerce and it's a quasi-regulatory system controlled by the Department of Commerce and for assigned names and numbers which refer to by its acronym ICAM. And ICAM instituted rules which control the functioning of the internet domain name system. The rules are both quasi-regulatory and contractual and ICAM contracted with the Department of Commerce and the registry contracts with directly to control the registry records for their domain names. The ICAM rules set up intermediaries. Registrars are accredited by ICAM and contract with ICAM and the intermediary is called the registrar. And the registrars have also agreed to abide by the ICAM rules through their contracts. In CWAS, they're a registrar. And the ICAM rules set up a registration-based system. So under the ICAM rules, the party listed as the registrant for a particular domain name has the right to control that domain name. The ICAM rules contemplate that there may be ownership disputes and the ICAM rules are clear. During any dispute, the registrant is the person to control that domain name, their domain names. Counsel, it's your time. You only have a couple minutes left, so I don't know if you want to talk about the sanctions. Well, my time and Mr. Lewis's time are … But this is your combined time. You have 15 minutes combined because they merged your time with his. Oh, they merged my time with his? I think this is your time for everything. Okay. They merged my time with his. I'm getting confirmation from the clerk. That's correct. That's correct. So you've got a minute 30 left to talk. I'll give you a friendly question on your sanctions. I mean, what rule or case says that in your disclosure of interested parties, you have to disclose a creditor interest in an entity? I couldn't find a case that says you have to disclose a creditor interest in an entity. And of course, you're disclosed as an attorney, right? I mean, as a judge, the judges use that to run the conflicts check, but you're already disclosed as an attorney for conflict checks. Well, I disclosed my position as a creditor also multiple times when the case was filed. Right, but that's not my question. My question is even if the judge gets the case and says I need to run conflicts, I need to look at the certificate of interested parties, I need to look into the lawyers. I mean, it was known you were involved in the case from the standpoint of the conflict check. Correct. Because you're the lawyer. I mean, I'm stating an obvious question. Yes, and I also disclosed my creditor status multiple times to the court. Let me ask you about that. What do you mean? In what way did you frequently disclose your creditor status? In the pleadings and in different filings in the Northern District. All right. And a couple times it was bolded and underlined that I'm a creditor. But not at the beginning, not in the . . . Yes, right at the very big . . . Where at the beginning? At the very outset of the case because . . . Not in the certificate of interested parties, but . . . Not in the certificate of interested parties because I did research and under the Northern District rules, the creditor status didn't . . . Okay, so where at the beginning of the case did you . . . At the beginning of the case and creditor status isn't required under the Northern . . . I thought you just said you did disclose it at the beginning of the case. What is the first document that you believe that you put this in, in the case? What is the first document? If you're going to rely on that argument . . . One is like one, two or three. It was right at the very beginning where I disclosed creditor status. In what type of filing? Right at the beginning. What type of filing? Oh, I can't remember, but if the court would let me submit a post-hearing letter, I'll be happy to point out every place that the creditor status . . . So, we have the materials. We have the materials. Thank you. You need to wrap it up, sir. I'll wrap it up in about 30 seconds. I just want to mention that inherent authority derives from the well of necessity and it's important that the court preserve inherent authority to those cases of necessity. And, under Rule 11, it has due process protections, safe harbor provisions and applies uniformly in all courts. And, if Rule 11 isn't used and judges are freely allowed to use inherent power sanctions, then that would render Rule 11 superfluous. Thank you, Mr. Shipp. Thank you. Mr. Steeve. May it please the court, Jason Steeve for the cross-appellant CWASP. There are a lot of issues in this case. It's a little difficult to know where to start. One thing that came up in Mr. Shipp's argument that I think needs some clarification is the two parties' claims for fees are under separate statutes. So, there are two different claims for fees at issue here. And, I think there's a little . . . it sounded like maybe a little confusion about the prevailing party. Mr. Shipp was trying to talk about his claim for fees under the Stored Communications Act, which is . . . that does not involve the prevailing party. You're saying you get them under the TTOI? Sorry, say that again. Then, there's the TTOI. Right. Our claim for fees is under the TTOI, which does involve the prevailing party issue. Their claim for fees under the SCA does not involve the prevailing party issue. So, it sounded like maybe there was some confusion about where the prevailing party issue fits in. That's relevant to our claim for fees. Now, on that prevailing party, I do want to stress, if this court does nothing else, I mean, if the court leaves everything in place at the district court, other than the fee issue, the one thing the court has to do is send us back to get our fees. It is very clear under Texas law that we are the prevailing party under the TTOI. All of the case law we've cited says dismissal with prejudice of the TTOI claim, a take-nothing judgment. That makes the defendant on the TTOI claim the prevailing party. There's no contrary case law. What effect does the grant of summary judgment in favor of domain protection present on whether CWAS is the prevailing party? So, we have our arguments for why the summary judgment on the TTOI claim are wrong. Again, even if the court doesn't disturb that, preliminary rulings, interlocutory rulings— The question I asked was for you, not for him. I'm talking about for me. Yeah, that's why—that's what the confusion was in the earlier point. Gotcha, gotcha. But, yeah, it was— Yeah, so— But— The question here is— Because you exceeded—if you win it interlocutorily, you ultimately did not win. No, we ultimately did win. How did you win if you— We want to take another— If you lost on the summary judgment, why isn't that a problem? The summary—the district court said that as a matter of summary judgment, we're liable under the TTOI. Right. And they sent us to trial for determining damages under the TTOI and under all of them. Right, and there were no damages. Right. But that doesn't mean that— That means we're the prevailing party. We won. Take-nothing judgment, dismissal of all— They had gotten an injunction, though. A preliminary injunction. Yes. So preliminary— And that—you could argue that that disturbed the relationship between the parties at that point. So, first of all, injunctive relief is not available under the TTLA. So whether we lost on relief under some other cause of action is irrelevant to whether we're the prevailing party. And you think it's irrelevant that they won on the summary judgment also. But that's an interlocutory ruling, and then we went to trial, and we won. And Texas case law is very clear. Take-nothing judgment for a defendant and a dismissal of all claims of prejudice makes the defendant the prevailing party under the TTLA. The Agar Corp case— Right, but the injunction is the complication to me because they did win preliminary relief. But again—and actually, I did find a case we hadn't found previously about injunctive relief not being available under the TTLA. You're going to cite something not in your brief, too? Just a case. Well— I mean, I'm not making arguments that weren't made before. Okay. Then did you tell the other party—did you tell Mr. Sheps while you were sitting out here waiting that you were going to cite a case not in your brief? I mean, it's an additional authority. Right. Did you tell him, when y'all have been sitting here for an hour today, I've got another case. I want to make sure you see it before we go up there. I can submit it as a 28-J letter if the court would prefer that I do that. It's just an additional case that says injunctive relief— Okay. But my point is you're not supposed—it's not collegial, and you're not supposed to cite cases not in your brief. You can submit it as a 28-J, and you can file a response to the 28-J— Okay. —if you choose to. Let me ask you— Should I file a 28-J response to all the stuff that wasn't in the brief that he was arguing? Yes. You may file a— I don't need to do that. Okay. I really think that was a little bit not necessary to say right now. But yes, you can have a 28-J, too. Okay. But I didn't think—he didn't cite an actual case, and so that was the difference I was making. All right. But— Without citing the additional case, the case law that we have cited makes it pretty clear, and the statute—the language of the statute itself makes it pretty clear. Injunctive relief is not available under the TTLA. Yeah, but let me ask you about the TTLA. What is the injury that the other side, domain protection, was claiming? It is that you had seized, blocked, otherwise made unavailable these domain names, correct? That's the TTLA claim in addition to being a claim under— That's the claim that underlies all of their causes of action. Right. And so the injunctive relief required you to return, release, otherwise stop the interference with those domain names. Now, even if the TTLA only provides for monetary damages, it seems to me the effect of that is the return of the property is the equivalent of being paid for property that's not returned. And what we're dealing with, there's some case law, and you have another case, no doubt, that we probably don't need to see, but that's up to you. It does seem to me that when the district judge was looking at this, they got the benefit of the TTLA in the sense that it stopped, and I'm sure you don't like the word, but that's the name of the statute, the Theft Liability Act. But the way it was remedied was by return of property rather than payment of property. And it does seem to me that there's some, there's certainly some equity in what the, there may be, let me not overstate it, some equity in what the district judge said, and it is that attorneys' fees for this, you're not enough of a prevailing party, and there are cases going the other way, but it seems to me it's not just a matter of whether there's injunctive relief or not. It's that the violation that the TTLA was trying to correct was corrected. Why isn't that at least something proper for the district court to consider before awarding attorneys' fees? Because the availability of fees under the statute is tied directly to recovery under the statute. Recovery under the statute is for damages on the theft. They might be entitled to injunctive relief on some equitable basis, but they wouldn't get fees on equitable grounds. There's no fees available under equitable grounds. So was there a mistake to ask for injunctive relief? They should have just said pay us for these. We don't want the domain names back. Would they be the prevailing party then if that's how it played out? Would they be the prevailing party? Well, we don't want injunctive relief. We don't want the domain names back. You're ruining them, whatever else. We want damages. So there never was an injunction. That would have left open the possibility of attorneys' fees. They still would need a verdict for whatever these things would have been worth if shown at trial. And then they could have been the prevailing party. Is that what you're saying? If they had been awarded damages, then they would have been the prevailing party. But they can't be awarded damages because they got the property back. And so that eliminated their ability to be prevailing parties because they got the property back. They were not awarded damages only because they got the property back. They had other claims about why they were entitled to damages. They claimed a bunch of names were never returned to them. They lost names that weren't renewed. They had a bunch of reasons that they were claiming damages. But there was value of some sort even if it was not significant. I don't know anything about the evidence. There was value of some sort to these domain names. So if they had not been returned, you would think that value, a fairly good prospect, would have been awarded at trial. I'm not – the simple answer here is fees are available under the statute if you win under the statute. So all of these other – if they have alternate causes of action, if they have alternate ways to get relief, they can get an injunction. They can not seek an injunction. Maybe they could get damages one way or not another. All of that is irrelevant. How they win or they don't win under a bunch of other causes of action, that's all irrelevant to are they entitled – I understand your point that there's no specific injunctive relief provision in the TTLA. But Texas law, there's general equitable power, as there is in federal court, to enjoin a violation of the statute. And that's what happened, right? No, they sought the injunction under the TTLA and the SCA. They sought the injunction under both grounds. An injunction is available under the SCA. It's not available under the TTLA. We didn't argue – I thought in the Texas case – I mean I thought in the Texas case there was general equitable power of a court if it thinks – On equitable grounds, but that's not under the statute. And so – okay. And so you're relying on what, that Houston case, Glatley, or is that the – Glatley is one of the cases that says there's no injunctive relief. So they might get equitable relief. They might get injunctive relief, but there's no fees available under equitable relief. They can't recover their fees if they got an equitable injunction. To me the issue is who's a prevailing party. Yeah. Does it undermine your – it seems like they prevailed at some point, got the injunctive relief. You prevailed at the end with the take nothing. So to me it's a question of how does the injunctive relief they obtained influence the prevailing party determination. So maybe the easiest way to think about this is let's assume they don't bring any other claims, any other grounds for relief other than a TTLA claim. They just only allege a TTLA cause of action. If that's all they do, they cannot get any injunctive relief. And so – You just said they could. But if they don't assert any equitable grounds for an injunction, they don't have any grounds for an injunction on just the TTLA. I guess that's what I'm – I don't understand. Well, they have – Texas courts have general equitable power. If the law is being violated, whatever that law is, they can enjoin that violation. But they would have to ask for that relief on equitable grounds, not under the TTLA. You're saying the district court – you're saying it wrongly granted the injunction. Well, we think – that's a whole separate issue whether it was rightly or wrongly granted. No, but I mean not just on the underlying merits, but you're saying the court didn't have the power to issue the injunction. It did have the power on other grounds, not under the TTLA. Well, because you're saying it – Sue Esponti acted in equity if it were acting in equity because they didn't ask. The courts also – Sue Esponti acted about the sanction. I mean, you know – Look, I can tell you this. This is the simple answer. There is no Texas case, none, zero. There is no Texas case that says a preliminary injunction makes a plaintiff the prevailing party even if later the plaintiff won nothing. Even if there's a take-nothing judgment and the claim is dismissed without – with prejudice, the preliminary injunction makes the plaintiff the prevailing party. No case says that. Every case says the defendant, us, is the prevailing party if a take-nothing judgment and a dismissal of the claim with prejudice is what is – After the stuff was returned. It doesn't matter because there's no preliminary injunctive relief available under the TTLA. We won the TTLA claim. They won an injunction on other grounds, but preliminary rulings and summary judgment, interlocutory rulings, none of that matters for the TTLA. Let's say you're hypothetical. The judge – a one-claim case. You file a complaint, violation of the TTLA. They stole our stuff. And then you move for a preliminary injunction. A court cannot issue an injunction in your view, and the court is a hearing. It says, oh my gosh, you are violating the TTLA. I'm going to use my equitable powers to enjoin you. Give it back. The court is absolutely empowered equitably to enter that injunction. There's no basis for fee recovery based on the injunction. But the injunction would be based on a violation of the TTLA. Okay, I understand you. Okay, now I understand. Sure, but that preliminary ruling doesn't affect who's entitled to fees under the statutory cause of action. The fee recovery depends on who's determined to be the ultimate prevailing party. We are the ultimate prevailing party. We want to take nothing judgment with dismissal with prejudice. Well, but you're the ultimate prevailing party because a significant part of the damage has been corrected by the injunction. We all understand your argument. Just the rigidity of it, which the law can be rigid, the rigidity of it is not something that necessarily you're persuading us with. Let me ask you about something else on the conversion claim and the argument that not all the property was returned. I think the response to that is that the registration period for that had expired and it hadn't been renewed. The counterargument to that is that because it had been seized, we couldn't renew the registration. Just help me with this argument factually that some of the domain names were not returned. So that argument in this appeal goes to their claim that they should get permanent injunctive relief. I want you to respond. So what they're basically asking this court to do is revisit these factual questions that you're asking. This was tried. This was part of what went to the jury about what the value of any unreturned domain names was. That was part of what was tried, but ultimately what they're asking for is the permanent injunctive relief for the return of property. And the district court denied that because it heard this evidence about names not being returned, names still needing to be returned, and the district court said there's nothing to any of that. You don't have any grounds for that injunctive relief. Why is there nothing to it legally, factually? Because we presented contrary evidence that there are no names that we have control over that we could return to them. And the district court heard all the evidence and said, you have nothing, no factual basis for permanent injunctive relief. They're asking this court to reverse that and impose permanent injunctive relief to order us to return names, and they want to revisit the evidence. And they're allowed to ask for that. You act like that's not allowed to be asked for. They can ask. It's under a highly deferential standard if it is indeed a factual finding. That's my point. But they can ask for it and say that it's not supported. That's my point, though, is they have framed it in their briefing as a matter of law that they're entitled to injunctive relief because there are names that need to be returned. I'm saying what they're actually asking is to revisit evidentiary factual matters, but they haven't cited the proper standard of review. They haven't made a clear error argument about factual matters. But what I'm asking you now is why can't the property be returned and why shouldn't it have been returned even if it has no value? No, there is no property to be returned. The premise of the question is why can't property be returned. There's no property to be returned. Well, it's expired rights. Why can't they be handed over as valueless but handed over nonetheless? There's nothing to hand over. There is no property at all. So a domain name, if it's owned by somebody, they have to renew that ownership. Right, I know it expired. If it expires, they don't own it anymore. Right, but you can say it used to be as between you and me, you have the domain name, which is valueless because it's expired. We return to you your expired domain name. No, there's no such thing. We can't return an expired domain name. But you can say as between me and you, it's not mine. And then they can go and say it's, you're saying it's poof, disappeared. It's an expired domain name, yes. And so then they can go and litigate against that other person if they wish and they think they still have a right to it. But as between the two of you, they're saying they have a, not you two personally, except maybe for him in some capacity. That's the question. Why don't they have a superior right as between the two of you? Not a right that means that they actually have the right to the domain name. But we don't have anything either. There is not. There's a domain name that's registered under someone's name. And if they don't renew it, and someone will take it. I understand that. Do you not know that I understand that the domain name has gone to a third party? Your Honor, the way that you're asking me the question, I can't tell. Because we don't have anything. You're saying that why can't we return something that's expired. We don't have anything. You say this expired thing, it's yours. It's not valuable because it now belongs to somebody else. But here, it's not mine. We give up any interest we might have. We don't have any interest in it to begin with. Okay, we're talking. Thank you. You've answered the question, I think, to the best of your ability. So we'll continue on. Let me close this, if I could. Is all this part of what went to the jury, the issue of whether you still had some interest in these unreturned names, and was that put to the jury, and the jury's answered it for us? In the context of damages, whether there was any way in which we had harmed them to the tune of any value, whether that involved still holding names that they owned or us causing the expiration of names that were registered under their name, everything in the context of damages was put to the jury, yes. The jury's got one question about whether there were damages. I guess all I'm asking on this, and I really shouldn't extend it even this far, but how do we know what you're saying has been dealt with at the district court? Did you all write on your interpretation that this is expired and we have nothing to return? How was that . . . who dealt with that? Jury, judge, and in what way in the district court? The district court dealt with it directly when DP asked for a permanent injunction after the verdict and asked repeatedly at least one or two motions to reconsider. The district court said there's no grounds, there's no basis, there's no underlying factual basis for permanent injunctive relief to force us to return something because there's no evidence that we have anything to return. The district court addressed that multiple times and denied their request for the injunctive relief. They're asking this court to say that that was an error, which requires revisiting the underlying factual issues, and they haven't cited the proper standard of review. They haven't made a clear error kind of argument. They've just said as a matter of law they should get an injunction. And we're saying the district court's decided the factual issue. We've presented the evidence for why we don't have anything. There's no clear error here on that issue. Do you have any position on the last issue we discussed? I guess it was the last one, Mr. Sheps and his identification of himself being an accreditor. That doesn't directly concern you, I suppose. So the failure to disclose was raised by us as a ground for sanctions. It had a lot to do with obstruction in the discovery process. There was a lot of obstruction by Mr. Sheps acting as the attorney in preventing us from deposing Ms. Katz. I saw all that, but I didn't see that that was the ground. I mean the district court actually rejected a lot of the grounds you sought. Right. Those were rejected as grounds for the sanctions. Right. But the reason that the failure to disclose became relevant is it turned out that part of the reason she wasn't disclosing— What gives him notice that he's supposed to disclose being a creditor in an entity? I mean— I haven't found anything. I've looked. Yeah. I don't know. He was on notice that we were arguing this is— Hey, part of the reason he was obstructing the discovery was because of his financial interest and him and Ms. Katz colluding and conspiring to do what they did, and he didn't want that discovered. So we were saying that the failure to disclose all this is relevant to the obstruction of the discovery, etc., etc., and that's a problem and there should be sanctions, and the district court agreed with us. The argument on his appeal is that he didn't get a chance to respond, and that's just false. He had the opportunity to respond. He didn't. Now he wants to say there's everything in the record about it, but it's the court has discretion— the district court has discretion to impose those sanctions, and he missed his chance to respond to it. If there's nothing further from the court, I'll— We ask the court to reverse on the fees. We have your argument. Thank you. Do you have rebuttal, Mr. Sheps? I'm sorry, I didn't hear what you said, Your Honor. Do you have rebuttal? Yes, Your Honor. Thank you. They didn't return all the names. They got caught trying—they got caught selling after the preliminary injunction. They got caught trying to sell my client's valuable four- and five-letter names after Nick— Do you have to overcome factual findings on that to prevail? I don't understand the question. You're making a statement that they didn't return the names. Yes. Was there a finding by the trial court or by the jury or by someone such that you would have to overcome a factual finding, which is very deferential review on that point for you to prevail in this court? No, the jury wasn't asked about returning the names. The jury was only asked about detainment damages. Did the district court decide the issue beforehand? The district court decided the issue. They were ordered to return all the names. They didn't return all the names. We have receipts for renewals of the names. We made a motion for receiver to get the names—to get all the names back. The motion for receiver was denied. They got caught selling—trying to sell the names that they didn't return. And an example of a listing of the names that they didn't return is in the record at 12310. That's one place in the record where it points out a lot of the names that they didn't return. And under the conversion claim, we sued for more than just detainment damages. We sued for a permanent injunction for return of the names. And the court granted a summary judgment on the return of the names. It granted a preliminary injunction to return the names. And the judge made a legal mistake when he didn't order—when he didn't enter judgment for a permanent injunction to return the names. Because we sued—we asked for that. And that had nothing to do with the jury. And in summary judgment, we found that we were entitled as a matter of law to the return of the names. And then the judges missed the case with prejudice. And as far as the sanctions go, I was never warned by the court of any conduct that would bring in inherent power sanctions. And they made two motions for sanctions. The failure to disclose was raised in the first motion, wasn't raised in the second motion. The first motion was denied without domain protection having an opportunity to respond to it because they made a motion for an overlength motion. And the overlength motion was granted. But then the motion itself was denied on the merits. And since no response was able to be submitted to the first motion, which is the motion that asked for failure to disclose sanctions, and then the judge sanctioned me under inherent authority, I think he should have used Rule 11 and let me respond to, you know, a show cause order or something. And I just want to briefly say that—close with a small note that CY Supplemental Authority letter, they attempt to argue that the purported lack of corporate authority voids ab initio any corporate assignment. And they rely on a case called the State of Burris, an unpublished 2015 Beaumont case. And that case relied on Citizen State Bank v. Caney Investments, a Houston case. And I'd just like to point out that Citizen State Bank v. Caney Investments was reversed by the Texas Supreme Court in 1988. And the site is 746 Southwest 2nd, 477. And the Fifth Circuit law on this issue is very well established, and it's really a small issue. But I just want to note that the Supplemental Authority letter relied on by CWAS and their supplemental briefing is they're relying on a reverse case. And that's all I've got. Thank you very much, Your Honor. Thank you. We have your arguments. Counsel, before you go, you can go back to your table. That's fine. This is for all counsel in this case. There seemed to be some kind of misunderstanding or view that you were being put upon or something regarding the rules that we have on what you're supposed to cite when you come to court. I just want to make clear that this is not some special rule that applied today or that was picking on either attorney in this case. The rules are that you're not supposed to cite things that are not in your brief. And certainly, if you learn something over the weekend or the night before or the morning of, it's the courteous practice to show the other side when you arrive in the morning. And certainly, you shouldn't. If you're going to reference something, you should not be referencing things that you haven't yet cited or presented. And we have formal methods for such as the Rule 28J letter to present items. This is commonly discussed in oral arguments in our circuit, and this is in the rules. And so, there was nothing different or unusual about the court's request that people not cite things that were not in their briefs. With that, each side may file 28J letters within three days on the new things that they had or the things that they believe the other side cited that they need to respond to. Thank you.